**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Republic Services Incorporated,<br><br>    Plaintiff,<br><br>v.<br><br>Sean Steves, an individual, and Jane Doe Steves, husband and wife,<br><br>    Defendants. | No. CV-18-01587-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant's Motion for Judgment on the Pleadings on Plaintiff's Non-Compete Claims and for a Protective Order as to Related Discovery (Doc. 33). The Motion will be granted.

**I.    BACKGROUND**

    **A.    Factual Background Allegations**

Plaintiff Republic Services Incorporated ("Republic") brought this action against its former employee Sean Steves ("Steves"). (Doc. 1.) The following allegations are taken from Republic's Complaint. "Republic provides non-hazardous solid waste and recycling services to various customers." (Doc. 24 at ¶ 8.) Steves "worked for Republic or its predecessors in various positions from in or around September 2001 until in or around May 2018." (*Id.* at ¶ 14.)

In May of 2016, Steves was promoted to "Director, Operations Support-Hauling." (*Id.* at ¶ 21.) As a condition of his promotion, he signed a Non-Competition, Non-Solicitation and Confidentiality Agreement (the "Agreement"). (*Id.* at ¶ 25; Doc. 1 at

¶ 25.) The Agreement was effective as of May 2, 2016. (Doc. 3-1, Ex. 4 at 33.) Arizona law governs the Agreement. (*Id.* at 36.) As the Agreement's name suggests, it contains three restrictive covenants:

> **1. Confidentiality**: Steves agreed that during the term of his employment and for five years after he would "not disclose Confidential Information to any person or entity either inside or outside of Company within the United States or any other territory, province or location in which Company conducts business other than as necessary in carrying out [Steves's] duties and responsibilities for Company, without first obtaining Company's prior written consent." (*Id.*) The Agreement further requires Steves "to immediately return" to Republic all Republic property upon Republic's request or the termination of his employment, and it makes clear that Republic owns all intellectual property created in the scope of Steves's employment. (*Id.* at 33-34.)
>
> **2. Non-Solicitation**: Steves agreed that during the term of his employment and for eighteen months after he would not solicit on behalf of any competitor "any customers or potential customers of Company with whom [he] had Material Contact." (*Id.* at 35.) The Agreement also prevents Steves from poaching "any employee, consultant, agent or independent contractor" of Republic to work for a competitor. (*Id.*)
>
> **3. Non-Competition (Section 3.2)**: Steves agreed, in Section 3.2 of the Agreement, that during the term of his employment and for eighteen months after he would not "Render Services" on behalf of any competitor. (*Id.*) "Render Services" is a defined term that includes almost any act conceivably related to the non-hazardous waste management industry. (*See id.* at 34.) As relevant here, such acts include "performing any kind of services, functions, duties or actions (including, but not limited to, sales, marketing, brokering, supervision and/or management) related to Non-hazardous Solid Waste Management" and "performing any activities that are the same as, or substantially similar to, the

duties and functions [Steves] performed for Company at any time during the last eighteen (18) months of [Steves's] employment." (*Id.*)[1]

Steves worked in his new position until April of 2018. He then notified Republic he was resigning. (Doc. 1 at ¶ 48; Doc. 24 at ¶ 48.) He informed Republic that he had accepted a position at Casella Waste Systems, Inc., one of the five "Principal Competitors" identified by name in the Agreement. (*Id.*; Doc. 3-1, Ex. 4 at 34.)

### B. This Lawsuit and Motion

Republic filed this suit seeking to enforce the Agreement's restrictive covenants. Among other things, Republic alleges that Steves "misappropriated approximately 10.5 gigabytes of Republic's information." (Doc. 1 at ¶ 62.) He was also seen on video surveillance logs entering Republic's corporate headquarters on a Saturday. (*Id.* at ¶¶ 65, 67.) When he walked in, he had an empty duffel bag; when he left, the duffel bag was full. (*Id.* at ¶¶ 65-66.) The Saturday in question, Republic asserts, was the only Saturday on which Steves had gone to Republic's headquarters all year. (*Id.* at ¶ 67.) Much of this

---

[1] In full, the relevant portion of the Agreement provides: "'Render Services' means any of the following activities, whether done as a principal, owner, director, officer, agent, employee, partner, member, contractor or consultant: (1) performing any kind of services, functions, duties or actions (including, but not limited to, sales, marketing, brokering, supervision and/or management) related to Non-hazardous Solid Waste Management; (2) developing, managing, analyzing, possessing or otherwise handling data or information related to Non-hazardous Solid Waste Management; (3) developing, managing, analyzing, possessing or otherwise handling data or information related to the potential or actual acquisition of businesses that engage in Non-hazardous Solid Waste Management; or participating in any decision, or developing, or implementing any strategy, to acquire such businesses; (4) conducting, participating in, or otherwise assisting any review of the prices/rates charged by Company, whether in connection with an initial contract bid, a contract extension or a request for a price/rate increase; (5) soliciting, requesting, reviewing, analyzing or otherwise handling Confidential Information about the costs (including SG&A or operational), revenues or profit margins of Company or whether, and to what extent, Company may increase its prices/rates; or (7) performing any activities that are the same as, or substantially similar to, the duties and functions Employee performed for Company at any time during the last eighteen (18) months of Employee's employment." (Doc. 3-1, Ex. 4 at 34.)

lawsuit, then, is about confidential information Steves allegedly misappropriated from Republic, in violation of federal law, Arizona law, and the Agreement.

Steves seeks judgment on the pleadings regarding a different portion of the lawsuit. He argues that the Agreement's covenant not to compete violates Arizona law as an "improper effort to block direct competition." (Doc. 33 at 4.) The Court now considers that contention.

**II.   JUDGMENT ON THE PLEADINGS**

   **A.   Legal Standard**

A motion for judgment on the pleadings made pursuant to Federal Rule of Civil Procedure 12(c) is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). On a motion to dismiss under Rule 12(b)(6), and therefore on a motion under Rule 12(c), all allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Judgment on the pleadings is appropriate when there are no issues of material fact and when, as a result, the moving party is entitled to judgment as a matter of law. *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

   **B.   Analysis**

"Arizona law does not look kindly upon restrictive covenants." *Unisource Worldwide, Inc. v. Swope*, 964 F. Supp. 2d 1050, 1063 (D. Ariz. 2013) (citing *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 367, 982 P.2d 1277, 1281 (1999)). "Of the various forms of restrictive covenants, those that tend to prevent an employee from pursuing a similar vocation after termination of employment are particularly disfavored. In part because an employee is in a position of unequal bargaining power vis-à-vis his employer, such restrictive covenants are strictly construed against the employer." *Id.* (quoting *Amex Distrib. Co., Inc. v. Mascari*, 150 Ariz. 510, 514, 724 P.2d 596, 600 (Ct. App. 1986)) (internal quotation marks and citation omitted). Thus, "a covenant not to

compete is invalid unless it protects some legitimate interest beyond the employer's desire to protect itself from competition." *Farber*, 194 Ariz. at 367, 982 P.2d at 1281. "Legitimate interests may include protecting for some time certain types of information acquired by the employee during the course of employment and retaining the customer base." *Unisource*, 964 F. Supp. 2d at 1063.

Restrictive covenants must be reasonable. The "ultimate question of reasonableness is a question of law," but evaluating reasonableness involves weighing the totality of the circumstances. *Farber*, 194 Ariz. at 366-67, 982 P.2d at 1280-81. "A restriction is unreasonable and thus will not be enforced: (1) if the restraint is greater than necessary to protect the employer's legitimate interest; or (2) if that interest is outweighed by the hardship to the employee and the likely injury to the public." *Id.* at 369, 982 P.2d at 1283. "The burden is on the employer to prove the extent of its protectable interest." *Bryceland v. Northey*, 160 Ariz. 213, 216, 772 P.2d 36, 39 (Ct. App. 1989). In short, a "restrictive covenant cannot simply squash fair competition by the former employee." *Unisource*, 964 F. Supp. 2d at 1063. Section 3.2, the Agreement's covenant not to compete, is unreasonable on its face.

Republic alleges in Claim III (Breach of Contract) that "Steves is breaching Section 3.2 of the Agreement by rendering services for Casella, one of Republic's Principal Competitors, at its corporate headquarters in Rutland, Vermont, just weeks after resigning from Republic." (Doc. 1 at ¶ 108.) "Vermont is a state where Republic conducts business, and Steves is rendering services on behalf of Casella within fifty (50) miles of several Republic facilities." (*Id.* at ¶ 109.) Republic seeks injunctive relief and damages based, in part, on these allegations. (*Id.* at ¶¶ 113-15.) In addition, a liberal reading of Claim V (Unfair Competition) suggests that Republic believes Steves's knowledge of Republic's confidential information gives Casella an unfair advantage, requiring Steves to be permanently enjoined from working there. (*Id.* at ¶¶ 123, 127-28.)

Because Section 3.2 violates Arizona public policy, the allegations founded on that Section fail as a matter of law. Only "[r]easonable restraints—those no broader than

the employer's legitimately protectable interests—will be enforced." *Amex Distrib.*, 150 Ariz. at 515, 724 P.2d at 1061. Through the confidentiality and non-solicitation provisions, the Agreement protects Republic's legitimate interests: its trade secrets, intellectual property, confidential information, clients, and other employees. The sweeping and gratuitous non-compete provision serves only to stifle competition and prevent Steves from obtaining lawful employment elsewhere in the industry. Indeed, the covenant is so broad that it seems to cover much if not most of the continental United States. "Neither thwarting competition nor hamstringing a former employee's ability to work is a legitimate interest." *Unisource*, 964 F. Supp. 2d at 1065 (citing *Farber*, 194 Ariz. at 367, 982 P.2d at 1281, and *Bryceland*, 160 Ariz. at 217, 772 P.2d at 40).

Republic asserts that although "confidentiality and nonsolicitation restrictions may have adequately protected Unisource's legitimate business interests, they do not adequately protect Republic's legitimate business interests." (Doc. 47 at 13.) Republic does not explain how its broad confidentiality covenant leaves out any protectable confidential information. A covenant not to compete—especially one that deprives a worker of any employment in much of the country—cannot be used as a draconian prophylactic to spare an employer from (1) having to think through and draft for the protection of its legitimate interests in the specifics of that employer's business and that employee's services, as required by *Farber*, and (2) having to prove the former employee's actual invasion of the legitimate interest to win the lawsuit. Having fully protected its legitimate interests with the conventional weapons of the confidentiality and non-solicitation provisions, Republic cannot justify massive overkill from the thermonuclear weapon of putting Steves out of work. *Unisource*, 964 F. Supp. 2d at 1063.[2] This is the effect of Arizona law's strong disfavor of covenants not to compete and strict demand for justification of such a covenant as far as it goes.

---

[2] This Court's holding in *Unisource* has been uniformly followed in similar cases. *See Or-Cal Inc. v. Tessenderlo Kerley Inc.*, No. CV-14-01980-PHX-DGC, 2015 WL 751212, at *5 (D. Ariz. Feb. 23, 2015); *Modus LLC v. Encore Legal Solutions, Inc.*, No. CV-12-00699-PHX-JAT, 2013 WL 6628125, at *4 (D. Ariz. Dec. 17, 2013). *See also*

In this case, Republic alleges massive theft of company documents which, if proven in any substantial part, will easily entitle Republic to commensurate relief. It says it can prove that by computer forensics and security monitoring. It may not be so in every case, but in this case the overkill of a covenant not to compete is apparent.

Steves is entitled to judgment on the pleadings on Claims III and V concerning the Section 3.2 covenant not to compete. The Court decides nothing about the other terms or Sections of the Agreement.

## III. PROTECTIVE ORDER

Steves also seeks a protective order prohibiting discovery into matters that relate solely to the covenant not to compete.

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The party opposing disclosure has the burden of proving good cause, which requires a showing that specific prejudice or harm will result if the protective order is not granted." *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011). In "determining whether to protect discovery materials from disclosure under Rule 26(c), a court must not only consider whether the party seeking protection has shown particularized harm, and whether the balance of public and private interests weighs in favor, but also keep in mind the possibility of redacting sensitive material." *Id.* at 425. It "is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978).

Steves seeks protection from discovery by Republic into the nature and duties of his current position. At the hearing on August 6, 2018, the Court gave direction on such

---

*Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F.Supp.3d 1021, 1040 (S.D. Cal. 2017).

Of course, a covenant not to compete in connection with the sale of a business has different justifications and legitimate reach.

- 7 -

discovery for the purpose of preparation for the hearing on preliminary injunction. The direction the Court now gives supersedes that direction and applies to all further discovery in this case.

The discovery Republic seeks is now generally irrelevant in light of the partial judgment on the pleadings given in this Order. It is also highly burdensome. However, discovery is appropriate on the remaining claims. Discovery appropriate to those claims is not excluded merely because it would also be appropriate to the excluded claim for breach of the covenant not to complete. Even relevant discovery can be limited if burdensome and of insufficient probative value. This Court cannot judge in the abstract and in advance of specific context whether specific discovery is proper. But to be appropriate such discovery would be peripheral and not extensive.

IT IS THEREFORE ORDERED that Defendant's Motion for Judgment on the Pleadings on Plaintiff's Non-Compete Claims (Doc. 33) is granted and Defendant is granted judgment on the pleadings against those claims in Claim III and Claim V.

IT IS FURTHER ORDERED that the Motion for Protective Order as to Related Discovery (Doc. 33) is granted and discovery into Defendant's employment with Casella Waste Systems, Inc., is excluded to the extent such discovery relates only to the covenant not to compete.

Dated this 7th day of August, 2018.

_____
Neil V. Wake
Senior United States District Judge